# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS GONZALEZ, | CV F 06-1776 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| | [Doc. 1] |
| K. MENDOZA-POWERS, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation ("CDCR") pursuant to a judgment of the San Diego County Superior Court. Petitioner was convicted of attempted premeditated murder on June 30, 1988. He was sentenced to a life term with the possibility of parole, which began on June 10, 1990. (Exhibit A, Abstract of Judgment.)

In the instant federal petition for writ of habeas corpus, Petitioner challenges a decision of the California Board of Prison Terms (now the Board of Parole Hearings, hereinafter "BPH") finding him unsuitable for parole following a parole consideration hearing on February 15, 2005. (Exhibit B, Hearing Transcript.) Petitioner contends that the February 15, 2005, decision denying him parole violated the Fourteenth Amendment because it was not based upon "some

1  evidence." (Petition, in general.)

2      On May 26, 2005, Petitioner filed a petition for writ of habeas corpus in the San Diego

3  County Superior Court. (Exhibit D.) On July 21, 2005, the San Diego County Superior Court

4  denied the petition in a reasoned decision. (Id.)

5      On August 15, 2005, Petitioner filed a petition for writ of habeas corpus in the California

6  Supreme Court. (Exhibit E.) On June 14, 2006, the California Supreme Court summarily denied

7  the petition. (Id.)

8      Petitioner filed the instant federal petition for writ of habeas corpus on November 22,

9  2006. Respondent filed an answer to the petition on March 13, 2007, and Petitioner filed a

10  traverse on April 13, 2007. (Court Docs. 9, 10.)

## STATEMENT OF FACTS[1]

    The attempted murder occurred on [October 8, 1997], in the Oasis Nightclub, 3184 Market Street, San Diego. Cepero and [Petitioner] were seated at a table in the nightclub, with two women. A dispute developed between Cepero and a waitress. Cepero slapped the waitress, and a former employee at the nightclub, victim Curtis Lee Thomas, objected, told Cepero to leave the club, and escorted him out the door.

    Cepero went to the trunk of his blue Cadillac Seville, opened the trunk and appeared to look for something, closed the trunk and returned to the door of the club. He called for his "brother Carlos" and [Petitioner] came out.

    Cepero asked [Petitioner] to loan him his gun, and Gonzalez went to the trunk of the car, got a gun and gave it to Cepero.

    Cepero returned to his car, where he loaded the pistol. He walked back to the club's door, where a security guard attempted to prevent him from entering by closing the door. Cepero fired two shots into the door, then opened it and went inside. He fired two more shots, hitting none of the 200 or so persons in the club as the victim ran into a patio at the rear. Cepero left by the front door, climbing into the passenger seat of the blue Seville, which was driven away by [Petitioner].

    A security officer, who had called police, flagged down a passing patrol car, told the officer that there had been a shooting, but that no one had been hurt, and said which direction the Seville had gone. The patrol car left in that direction.

    Very shortly thereafter, the blue Seville was driven up to the front of the club, Cepero got out, and went into the club. [Petitioner] remained in the driver's seat with the engine of the Cadillac still running.

    Cepero entered the club shooting, "Where's he at, where's he at?" He saw victim Thomas, shot at him, hitting him in the arm, fired at him again but missed, ran out the front door and got into the car. [Petitioner] drove the car away.

    Victim Thomas staggered some distance inside the club, and collapsed. He was taken to UCSD Hospital, where it was determined he had been struck by a single shot. The bullet struck his right forearm, traveled completely through, then

---

[1] This information is derived from the Probation Officer's Report, attached as Exhibit C to Respondent's Answer. (Court Doc. 9.)

2

1  struck him in the middle abdomen.  Superficial damage was done in his abdomen,
2  but the bullet remains lodged there, doctors electing to leave it rather than risk removal from a critical area.
3  Victim Thomas suffers considerable pain from the injury to his arm, and understands he will not recover full use of that arm.

4  (Exhibit C, at 3-4.)

## DISCUSSION

I.  Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death  Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade,  538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination

1  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
2  § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.
3        As a threshold matter, this Court must "first decide what constitutes 'clearly established
4  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
5  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this
6  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
7  of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
8  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
9  principles set forth by the Supreme Court at the time the state court renders its decision." Id.
10        Finally, this Court must consider whether the state court's decision was "contrary to, or
11  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
12  72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
13  grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
14  Court on a question of law or if the state court decides a case differently than [the] Court has on a
15  set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.
16  at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the
17  state court identifies the correct governing legal principle from [the] Court's decisions but
18  unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at
19  413.
20        "[A] federal court may not issue the writ simply because the court concludes in its
21  independent judgment that the relevant state court decision applied clearly established federal
22  law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.
23  A federal habeas court making the "unreasonable application" inquiry should ask whether the
24  state court's application of clearly established federal law was "objectively unreasonable." Id. at
25  409.
26       Petitioner has the burden of establishing that the decision of the state court is contrary to
27  or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
28  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

The court looks to the last reasoned state court decision as to the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)).  Here, the last reasoned state court opinion of the San Diego County Superior Court found that "some evidence" supported the Board's finding of unsuitability of parole.  **(**Exhibit D.**)**

II.     Review of Claims

A parole release determination is not subject to all of the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987).  At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court further held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in

5

the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the BPH is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

With regard to the procedural protections, Petitioner received all that was due under Greenholtz. Petitioner was provided all that is required. Petitioner was provided with advance notice of the hearing, an opportunity to submit materials for the BPH's consideration, an opportunity to be heard during the hearing, and a written decision explaining the reasons that parole was denied. **(**See Exhibit B.**)**

At Petitioner's 2005 hearing, the BPH denied parole based primarily on the circumstances of Petitioner's commitment offense, but also because of Petitioner's disciplinary actions in prison, and the equivocal psychiatric report regarding Petitioner's risk for future violence.

1  (Exhibit B, at 45-48.)

2      In denying Petitioner's state habeas corpus petition, the San Diego County Superior Court
3  held, in pertinent part, as follows:

>  According to the recital of facts at the subject parole consideration hearing,[] Petitioner and a friend were in a bar when Petitioner's friend argued with a waitress. The friend slapped the waitress and the friend was asked to leave. Petitioner admits his friend was intoxicated, but Petitioner was not, although he had been drinking. At the same bar, later that evening, the friend contacted the Petitioner and asked Petitioner for a gun. The Petitioner kept the friend's gun in the trunk of Petitioner's car for safekeeping. Petitioner stored the gun unloaded. Petitioner retrieved the gun and gave it to the friend. The friend loaded the gun, went into the bar and started shooting. The friend left the bar without hurting anyone and Petitioner drove the two away from the bar. Subsequently, the pair returned and Petitioner stayed in the car with the engine running. The friend entered the bar a second time and shot the victim in the arm. The friend left the bar and got into Petitioner's car and the two drove off.
>
>  When the friend shot the victim, the bullet settled in the victim's abdomen. The victim suffered permanent injury to his arm with continued pain to this day. The victim will never recover full use of his arm. The bullet was not dislodged from the victim's abdomen. []
>
>  Petitioner points out he did not injure or kill the victim. [] But, Petitioner provided the gun, and the transportation that resulted in the attack. In addition, Petitioner was not intoxicated and might have persuaded his intoxicated friend to calm down, thus preventing any harm. A reasonable conclusion from the facts of this case is the crime was particularly egregious in light of Petitioner's opportunity to prevent the crime. Instead, Petitioner conducted himself with callous disregard for human suffering. The victim was permanently injured and continues to suffer pain. The attack resulted from a trivial altercation between the friend and a waitress.
>
>  Petitioner's reliance on *Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 910 for the proposition that the Board cannot continue to rely on the commitment offense to deny parole is also misplaced. First, *Biggs* is not controlling authority in this Court. Second, the California Supreme Court has reiterated,
>
>>  The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole. (citations.) . . . [T]he authority properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 682-683.)
>
>  Moreover, *Biggs* refused to murder the victim, but agreed to be involved in the ruse to murder him. This involvement was sufficient justification for the denial of parole in that case. Here, Petitioner was not the shooter but provided the gun and transportation. These facts are analogous to the *Biggs* case in which parole was properly denied.
>
>  ........................................................................................................................
>
>  While continued reliance on the unchanging factors of the commitment

offense may indeed raise due process concerns at some time in the future if Petitioner is able to maintain his most recent prison record, the record now supports the Board's determination that Petitioner has not yet reached that point.

........................................................................................................................

C. **Post Conviction History**. Petitioner received six post-conviction disciplinary 115's with the last one issued in 1994. [] Petitioner has eleven 128(a) counseling chronos with the last one issued in 2000. [] These circumstances were properly considered by the Board. (15 California Code of Regulations, section 2402(c)(3).)

The Board also commended Petitioner for his participation in several programs, but concluded those positive aspects did not outweigh the other factors of unsuitability.

D. **Psychological Evaluation**. The conclusion of the forensic psychologist was that Petitioner would pose a "moderately low to moderate likelihood to become involved in a violent offense if released into the free community." [] This was based on the assessment that Petitioner is at risk for violent or harmful behavior when he uses drugs or alcohol which exacerbates his antisocial behavioral characteristics. [] In addition, the forensic psychologist considered Petitioner's cultural background, language issues, personal, social and criminal history, among other things. []

In rendering its decision the Board specifically noted that a new psychological evaluation would be ordered to review Petitioner's potential risk of danger to society if released from prison. The Board was concerned with the final assessment that Petitioner posed a "moderate to moderately low assessment of dangerousness." []

(Exhibit D, at 3-6, footnote omitted.)

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, as there is "some evidence" to support the BPH's finding of Petitioner's unsuitability for parole. The BPH found that the commitment offense was carried out in a manner which demonstrates a disregard for human suffering. (Exhibit B, 45-46; Cal.Code Regs. tit. 15, § 2402(c)(1)(E).)[2] The motive for the crime

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense. The factors to be considered include:
(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

appeared to be retaliation.  (Id.)

"Some evidence" supports the BPH's finding that the offense was carried out in a manner which demonstrates a disregard for human suffering and Petitioner currently poses an unreasonable risk to public safety if released.  By Petitioner's own admission he was intoxicated during the commission of the crime, and therefore was of clear cognitive thinking.  Although Petitioner was not the actual shooter and never fired the gun during the offense, he nonetheless played an essential role in the commission of the attempted murder.  Petitioner located and provided the gun to his intoxicated and irate crime partner, which was utilized to fire several shots into the nightclub.  Petitioner provided the transportation to his partner immediately following the first shooting.  Petitioner, while driving the vehicle, returned the club a second time and waited in the car with the engine running, while his partner fired additional shots into the club, hitting the victim, and then fled the scene.  Based on these factors, Petitioner's actions in the commission of the attempted murder clearly displayed a disregard for human suffering, and "some evidence" supports the BPH's finding that he currently poses an unreasonable danger to public safety if released.

As recognized by the San Diego County Superior Court, although at some point in time the BPH's sole reliance on Petitioner's commitment offense may rise to the level of a due process violation, at this time and on this record Petitioner has not yet reached that point.  See Biggs v. Terhune, 334 F.3d 910, 916-917 (9th Cir. 2003) (noting that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."); see also Irons v. Carey, 505 F.3d 846, 853-854 (9th Cir. 2007); Hayward v. Marshall, __ F.3d __ , 2008 WL 43716 *7 (9th Cir. 2008).

In the instant case, the BPH relied not only on the circumstances of the commitment offense, but also on Petitioner's disciplinary report and psychological evaluation, so the concern expressed in Biggs is not present here.  However, even if Biggs is applicable, Petitioner was

---

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

sentenced to life with the possibility of parole, and at the time of the 2005 hearing he had only served fifteen years of his life sentence and seven years beyond his 1997 minimum eligible parole date.[3] This does not result in a violation of due process as the Ninth Circuit has not provided a concrete standard as to when (and under what exact circumstances) the sole reliance on the unchanging circumstances of the commitment offense rises to the level of a due process violation.[4]

Petitioner has received a total of six serious 115 disciplinary reports, the last one in 1994. In addition, Petitioner has suffered eleven 128(a) counseling chronos, the last one occurring in May of 2000. (Exhibit B, at 46-47.) See Cal. Code Reg. tit. 15, § 2402(c)(6) (the Board may consider institutional behavior while in prison in determining whether prisoner poses an unreasonable risk of danger to society if released.).

Pursuant to 15 Cal. Code Regs. § 2402(c)(5), the BPH considered psychological factors in finding Petitioner unsuitable for parole, stating that the psychological report was not "totally supportive of release." (Exhibit B, at 47.) The BPH noted that the psychological report authored by Dr. Steven Walker assessed Petitioner's dangerousness if released to the public as low to moderate in becoming involved in a violent offense. (Exhibit B, at 47.) Although the psychologist noted several positive aspects of Petitioner's improvement during his incarceration, he specifically raised concern regarding Petitioner's "reluctance to see the relationship of substance (alcohol) use to some of his legal difficulties over the years, and inclusive of the controlling offense." (Petition, Attachment p. 167.) It was noted that Petitioner's "risk for violence or harmful behavior is exacerbated by the use/abuse of drugs or alcohol, and in association with his antisocial behavior characteristics. Substance use was a component in the

---

[3] Pursuant to California Penal Code section 190, subdivision (a), "Every person guilty of murder in the first degree shall be punished by death, imprisonment in the state prison for life without the possibility of parole, or imprisonment in the state prison for a term of 25 years to life." Because Petitioner was convicted of attempted first degree murder as defined in California Penal Code section 189, he was sentenced to life with the possibility of parole.

[4] Nor has the United States Supreme Court spoken on the issue of whether and when the denial of parole based solely on the continued reliance of the circumstances of the commitment offense results in a due process violation, and there is currently no clearly established Supreme Court authority on this issue.

inmate's history both outside or and within the institution." (Id. at 168.)  As a result Petitioner remains at a "higher risk for relapse, particularly associated with criminality, than will people in the general population without his particular substance use history."  (Id.)

      The BPH commended Petitioner for the amount of programming he has participated in including "Life Plan For Recovery, Men's Work, Anger Management, Creative Conflict Resolution and Conflict, Anger Lifelong Management completing - - or completion.  Alcoholics Anonymous, Parenting program, Parent Education." (Exhibit B, at 47.)  However, on balance these positive aspects did not outweigh the greater factors indicating unsuitability.  (Id.)  Although it is true that over time the weight given to the circumstances of the commitment offense fade as a predictor in determining the prisoner's present dangerous, prison misconduct and lack of rehabilitation may, as in this case, off-set the rate at which the circumstances of the commitment offense fade.  Here, Petitioner's rules violation reports include failure to report, refused to perform work twice, manufacturing alcohol twice, and fighting once.  (Exhibit B, at 34.)  Petitioner's rules violation reports for manufacturing alcohol are strong evidence of his substance abuse problem, which he has failed to address.  Petitioner's continued misconduct in prison and his failure to address a substance abuse problem which bears strongly on his risk for violence if released, coupled with the circumstances of his commitment offense, support the BPH's finding that Petitioner would present an unreasonable risk to public safety if released.  Accordingly, because some evidence supports the BPH's finding, the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

      In his traverse Petitioner argues that he is entitled to an evidentiary hearing because he was not afforded such in state court.  Rule 8(a) of the Rules Governing Section 2254 Cases provides that where a petition is not dismissed at a previous stage in the proceeding, the judge, after the answer and transcripts and record of the state court proceedings are filed, shall, *upon review* of those proceedings, determine whether an evidentiary hearing is required. (Emphasis added.)  The purpose of an evidentiary hearing is to resolve the merits of a factual dispute.  An evidentiary hearing on a claim is required where it is clear from the petition that:  (1) the

allegations, if established, would entitle the petitioner to relief; and (2) the state court trier of fact has not reliably found the relevant facts. See Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir.1992). As the function of an evidentiary hearing is to try issues of fact, Townsend v. Swain 372 U.S. 293, 309 (1963)(*overruled in part by* Keeney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715 (1993)), such a hearing is unnecessary when only issues of law are raised. Id.

Initially, the Court must determine whether a factual basis exists in the record to support Petitioner's claim. Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir.1999). If the claims can be resolved by reference to the existing state court record, an evidentiary hearing will be regarded as futile and will therefore be denied. Id.; Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir.1998) (same); Villafuerte v. Stewart, 111 F.3d 616, 633 (9th Cir.1997) (A petitioner's request to have a federal court hear the same evidence heard by the state court in the state habeas proceeding is not a valid reason for an evidentiary hearing.); Campbell v. Wood, 18 F.3d 662, 679 (9th Cir.1994) (An evidentiary hearing is not required on issues that can be resolved by reference to the state court record.).

In this case, a factual basis exists in the state record to support each of Petitioner's claims. More importantly, the factual basis for each claim was sufficiently developed at the state court, and this Court can resolve Petitioner's claims with reference to the state court record. Petitioner argues that an evidentiary hearing should be held on his claims; however, he does not claim the existence of any new evidence that would merit an evidentiary hearing. A federal evidentiary hearing would be futile. Accordingly, Petitioner's request for an evidentiary hearing is denied.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.   The instant petition for writ of habeas corpus be DENIED; and

2.   The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with

the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 30, 2008**             /s/ Sandra M. Snyder
                                       UNITED STATES MAGISTRATE JUDGE